UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| In re Application of<br><br>MING YANG,<br><br>                Applicant. | Case No. 19-mc-80207-LB<br><br>**ORDER GRANTING APPLICATION TO SERVE REQUEST FOR DISCOVERY FOR USE IN A FOREIGN PROCEEDING**<br><br>Re: ECF No. 1 |

## INTRODUCTION

Ming Yang is the plaintiff in an action pending before the Eastern Caribbean Supreme Court of the British Virgin Islands ("BVI").[1] In or around 1997, Ming[2] and his brother Cheng-Ta "Eric" Yang founded a company called Columbia Consulting Group, now known as Tutor Group Holding Inc., which holds controlling interests in underlying companies that operate a language-tutoring business.[3] In or around 2012, Ming, Eric, and another close relative, Lei "James" Yang,

---

[1] Appl. – ECF No. 1 at 5 (¶ 20). Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Because a number of the relevant individuals have the same surname, the court uses their given names to avoid confusion.

[3] *Id.* at 3 (¶ 10).

created a BVI company called MEJ Investment Ltd. and transferred their ownership shares in Tutor Group to MEJ.[4]

MEJ historically operated as a quasi-partnership between Ming, Eric, and James.[5] According to Ming, it was always understood that he would be entitled to participate in the MEJ's management and that Eric or James would consult him on any significant or important decisions made in relation to MEJ.[6]

Ming alleges that since approximately May or June 2017, Eric and James "have conducted the affairs of MEJ oppressively and/or in a manner that is unfairly discriminatory towards [Ming]."[7] Among other things, Eric and James allegedly had MEJ remove Ming as a director, had MEJ sell Tutor Group shares without consulting Ming or sharing any proceeds from the sale with Ming, approved a Chinese insurance company's acquiring a substantial interest in Tutor Group without Ming's consent or knowledge, and terminated Ming from his employment at Tutor Group and from all his roles in Tutor Group's language-tutoring business.[8]

In July 2019, Ming filed a lawsuit in the BVI against Eric, James, Eric's wife Chi-Weh "Celia" Sah (another MEJ shareholder), and MEJ, seeking a buyout of his interests in MEJ and other relief.[9]

Ming now files an application under 28 U.S.C. § 1782 seeking leave to issue a subpoena to The Goldman Sachs Group, Inc. for discovery in connection with his BVI lawsuit. Ming asserts that Goldman Sachs has been a shareholder (through various wholly-owned subsidiaries) of both preferred and common shares of Tutor Group since Tutor Group's Series C funding in 2015 and that, as a shareholder, it has informational and voting rights concerning MEJ's sale or dissipation

---

[4] *Id.* at 3 (¶ 13).
[5] *Id.* at 3–4 (¶ 16).
[6] *Id.* at 4 (¶ 16).
[7] *Id.* (¶ 17).
[8] *Id.* (¶¶ 17–18).
[9] *Id.* at 3 (¶ 14), 5 (¶ 20); Appl. Ex. C (Amended Statement of Claim) – ECF No. 1 at 23–31.

of Tutor Group shares, Tutor Group's termination of Ming, and the Chinese insurance company's acquisition of an interest in Tutor Group.[10]

The court grants Yang's application to serve its proposed subpoena on Goldman Sachs.

## ANALYSIS

### 1. Governing Law

Ming makes his application for discovery under 28 U.S.C. § 1782(a), which provides, in relevant part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. . . . A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege.

A litigant in a foreign action qualifies as an "interested person" under Section 1782. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 256 (2004). In order to apply for discovery pursuant to Section 1782, a formal proceeding in the foreign jurisdiction need not be currently pending, or even imminent. *Id.* at 258–59. Instead, all that is necessary is that a "dispositive ruling" by the foreign adjudicative body is "within reasonable contemplation." *Id.* at 259 (holding that discovery was proper under Section 1782 even though the applicant's complaint against the opposing party was only in the investigative stage). An ex parte application is an acceptable method for seeking discovery pursuant to Section 1782. *See In re Letters Rogatory from Tokyo Dist.*, 539 F.2d 1216, 1219 (9th Cir. 1976) (holding that the subpoenaed parties may raise objections and exercise their due-process rights by moving to quash the subpoenas).

---

[10] Appl. – ECF No. 1 at 5 (¶¶ 22–23).

A district court has wide discretion to grant discovery under Section 1782. *Intel*, 542 U.S. at 260–61. In exercising its discretion, a district court should consider the following factors: (1) whether the "person from whom discovery is sought is a participant in the foreign proceeding," (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal court judicial assistance," (3) whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States," and (4) whether the request is "unduly intrusive or burdensome." *Id.* at 264–65.

A district court's discretion is to be exercised in view of the twin aims of Section 1782: (1) providing efficient assistance to participants in international litigation and (2) encouraging foreign countries by example to provide similar assistance to our courts. *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 84 (2d Cir. 2004). There is no requirement that the party seeking discovery establish that the information sought would be discoverable under the governing law in the foreign proceeding or that United States law would allow discovery in an analogous domestic proceeding. *See Intel*, 542 U.S. at 247, 261–63.

When considering an application for discovery pursuant to Section 1782, the court considers first whether it has the statutory authority to grant the request and then whether it should exercise its discretion to do so. *Lazaridis v. Int'l Centre for Missing and Exploited Children, Inc.*, 760 F. Supp. 2d 109, 112 (D.D.C. 2011) (citations omitted).

### 2. Application

#### 2.1 Statutory Requirements

Ming's application satisfies the three minimum statutory requirements of Section 1782. First, Ming seeks discovery from Goldman Sachs, which he says can be found in this district.[11] Second, the requested discovery is for use in a lawsuit currently pending in the BVI. Third, Yang qualifies as an "interested person" because he is a party to the BVI lawsuit.

---

[11] *Id.* at 2 (¶ 7).

ORDER – No. 19-mc-80207-LB  4

**2.2 Discretionary *Intel* Factors**

The discretionary *Intel* factors also support granting the application.

### 2.2.1 Participant in a foreign proceeding

The first *Intel* factor asks whether the "person from whom discovery sought is a participant in the foreign proceeding." *Intel*, 542 U.S. at 264. If the person is a participant, "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad" because "[a] foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence." *Id.* "In contrast, nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Id.*

Goldman Sachs is not a participant in the BVI Action. This factor weighs in favor of granting the application.

### 2.2.2 Nature of the tribunal and receptivity to U.S. federal-court judicial assistance

The second *Intel* factor requires the court to "take into account the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264.

There is no evidence suggesting that BVI courts would be unreceptive to the discovery Ming seeks. Ming's BVI counsel submitted a declaration that the BVI Evidence Act 2006 allows the admission of such discovery and that "[t]he BVI Court has not made any order, declaration or statement to the effect that it would not accept the formal introduction of the requested documents and testimony by offer of proof."[12] Case law also suggests that BVI courts are generally receptive to discovery taken in the United States pursuant to Section 1782. *See, e.g.*, *In re Ambercroft Trading Ltd.*, No. 18-mc-80074-KAW, 2018 WL 2867744, at *4 (N.D. Cal. June 11, 2018) (collecting cases finding that BVI courts would be receptive to judicial assistance by U.S. federal

---

[12] Singh Decl. – ECF No. 1-2 at 4 (¶¶ 9, 11).

courts and allowing Section 1782 discovery). This factor weighs in favor of granting the application.

### 2.2.3 Attempt to circumvent foreign proof-gathering restrictions or policies

The third *Intel* factor considers whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 264–65.

There is no evidence suggesting that the instant application is an attempt to circumvent foreign proof-gathering restrictions or policies of the British Virgin Islands. Ming's BVI counsel submitted a declaration that "[t]he application for and use of material obtained by such discovery are not contrary to BVI public policy and such material would be allowed into evidence in the BVI proceedings once it is shown that they satisfy the primary test of relevance to the matters in issue."[13] The court has no reason to think that this application is an attempt to circumvent foreign proof-gathering restrictions in the BVI. *Cf. In re Ambercroft*, 2018 WL 2867744, at *5. This factor weighs in favor of granting the application.

### 2.2.4 Undue intrusion or burden

The fourth *Intel* factor is whether the request is "unduly intrusive or burdensome." *Intel,* 542 U.S. at 265.

Ming seeks to obtain documents and communications that appear to be directly relevant to his claims in the BVI action. His requests appear to be limited and circumscribed and do not appear to call for documents unrelated to MEJ or Tutor Group.[14] Additionally, if Goldman Sachs seeks to challenge the relevance, breadth, or burden of Ming's requests, it may do so. *Cf. In re Ambercroft*, 2018 WL 2867744, at *5. This factor weighs in favor of granting the application.

---

[13] *Id.* (¶ 10).

[14] *See* Proposed Subpoena Reqs. – ECF No. 1 at 17–18.

ORDER – No. 19-mc-80207-LB    6

**CONCLUSION**

For the foregoing reasons, the court grants Ming Yang's application to serve his proposed subpoena on Goldman Sachs.

If Goldman Sachs wants to contest the subpoena, it must notify Ming that it wishes to do so before the return date of the subpoena. Then, in lieu of a formal motion to quash, the parties must engage in the meet-and-confer and joint-letter-brief process set out in the court's standing order, which is attached to this order.

Ming must serve Goldman Sachs with a copy of this order and a copy of the standing order when it serves its subpoena.

**IT IS SO ORDERED.**

Dated: August 28, 2019

LAUREL BEELER
United States Magistrate Judge